**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Respondent/Plaintiff,

v.                                                                                          CV 06-373 BB/WPL
                                                                                CR 02-1104 BB

RICHARD VALENCIANO,

       Movant/Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on Richard Valenciano's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in federal custody. (Doc. 40.)[1] Valenciano was convicted at trial of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. 924(e). He was sentenced to 210 months' incarceration. (Sentencing Hr'g at 6.)

**PROPOSED FINDINGS**

I.    **Background**

    A.    **Summary of Facts**

Diersen Charities, a contractor for the Bureau of Prisons, is a halfway house that houses inmates who have been recently released from prison. (Tr. 21.)[2] While residing at Diersen, former inmates must follow several guidelines. For example, residents at Diersen may not drink alcohol or

---

[1] All document number references are to CR 02-1104.

[2] The Clerk's Office for the District of New Mexico was unable to provide an original copy of the trial transcript. For purposes of Valenciano's § 2255 motion, the Clerk's Office obtained a copy of the trial transcript from the United States Attorney's office. Page 99 of this transcript was missing from the copy of this transcript. Efforts to locate this missing page are ongoing.

use drugs, they must obtain permission to leave the premises, and they must adhere to a 9:00 p.m. curfew. (Tr. at 23.)

Richard Valenciano began living at Diersen on November 19, 2001. (Tr. at 23.) On February 2, 2002, at approximately 7:00 in the evening, Valenciano, along with nine other residents, began drinking alcohol in a dorm room at Diersen. (Tr. at 59.) At 11:45 that evening, Jochmal Gregory, a resident monitor at Diersen, observed Valenciano entering Diersen and returning to his dorm room in the C Wing of the property. (Tr. at 24.) At that time, Valenciano was not authorized to leave Diersen. (Tr. at 24.) Approximately fifteen minutes after Valenciano arrived, Valenciano's girlfriend, Esperanza Lara, arrived at Diersen and spoke with Gregory. (Tr. 24; Tr. 54.) Based on this conversation, Gregory went to his supervisor, Daniel Judiscak in hopes of locating Valenciano. (Tr. at 25.) The two men found Valenciano in his dorm room in the C Wing of Diersen. (Tr. at 25.) When found, Valenciano was unconscious in his bed. (Tr. at 25.) Judiscak began a pat down search of Valenciano and, after locating what he believed to be a gun, called the police. (Tr. at 25.)

Approximately fifteen minutes after Judiscak's phone call, officers from the Las Cruces Police Department arrived at Diersen. (Tr. at 25.) Officer Navarrette, the first officer to arrive, went to Valenciano's dorm room and, aware that a weapon could be involved, put handcuffs on Valenciano. (Tr. at 35.) Navarrette then conducted a pat down search of Valenciano and located the gun. (Tr. at 35-36.) Officer Sisco, who arrived shortly after Navarrette, retrieved the gun and an extra clip of ammunition from Valenciano. (Tr. at 44-45.) Valenciano became disorderly after being placed in the back seat of the police car, and, at one point, attempted to kick out the car window with his feet. (Tr. at 45.) After restraining Valenciano, the officers took him to the Las Cruces police station. Once at the police station, Valenciano spoke with Officer Garcia. (Tr. at 71.) According to Garcia's

testimony, Valenciano stated that he had taken the gun away from a friend. (Tr. at 72-73.) Garcia testified that Valenciano refused to identify his friend. (Tr. at 73.)

B.  **Procedural History**

On July 2, 2002, a federal grand jury in the District of New Mexico returned a one-count indictment, charging Valenciano with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1)[3] and 924(e). On September 25, 2002, after a one day trial, the jury returned a guilty verdict. On August 7, 2003, the district judge concluded that Valenciano, who had three predicate felony offenses, was eligible for enhancement as an armed career offender under 18 U.S.C. § 924(e)(2). (Sentencing Hr'g at 5.) Accordingly, the district judge sentenced Valenciano to a prison term of 210 months. (Sentencing Hr'g at 6.)

Following his conviction and sentencing, Valenciano filed an appeal with the Tenth Circuit Court of Appeals. The Court of Appeals held that Valenciano had no meritorious grounds for appeal. *United States v. Valenciano*, 126 F. App'x 883 (10th Cir. 2005). On May 1, 2006, Valenciano filed this Motion under 28 U.S.C. § 2255.

II.  **Discussion**

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Under § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if "the sentence

---

[3] "To sustain a conviction under 18 U.S.C. § 922(g), the government must prove three elements: (1) the defendant previously was convicted of a crime punishable by imprisonment exceeding one year; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate or foreign commerce." *United States v. Adkins*, 196 F.3d 1112, 1117 (10th Cir. 1999). At trial, Valenciano stipulated to the following two elements of the charged offense: 1) that he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and 2) that the "firearm had been shipped and/or transported in interstate commerce." (Tr. at 19.)

was imposed in violation of the Constitution or laws of the United States, or [] the court was without jurisdiction to impose such sentence, or [] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.

"Section 2255 motions are not available to test the legality of matters that should have been raised on direct appeal." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). Failure to present an issue on direct appeal bars a petitioner "from raising that issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *Id.* This bar does not apply, however, to ineffective assistance of counsel claims. *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002). A petitioner may not bring a claim under § 2255 that was considered and disposed of on direct appeal. *Id.*

Because Valenciano is proceeding *pro se*, I will construe his pleadings liberally. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)). This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is not required to fashion a *pro se* litigant's arguments for him where his allegations are conclusory and lack supporting factual averments. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall*, 935 F.2d at 1110). A court will generally not consider conclusory or unsupported claims. *See Hall*, 935 F.2d at 1110, 1113-14.

> A. **Valenciano's Ineffective Assistance of Counsel Claims**

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness.

4

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689. Thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Valenciano asserts that his counsel was ineffective for the following reasons: 1) for advising him to testify on his own behalf; 2) for failing to impeach the testimony of Jochmal Gregory; 3) for failing to challenge the basis of the search that led to the discovery of the firearm; 4) for failing to challenge the jury instructions; and 5) for failing to investigate Officer Garcia's relationship with the defendant.[4] For the reasons discussed below, I conclude that Valenciano fails to meet the requirements needed to establish a claim for ineffective assistance of counsel.

        1.    **Valenciano's Testimony**

Valenciano claims that he was denied effective assistance of counsel because his attorney allowed him to testify. Specifically, Valenciano argues that this decision enabled the government to call an impeachment witness to rebut his testimony. According to Valenciano, the prosecution's ability to introduce this impeachment witness significantly weakened Valenciano's claim that he lacked knowledge of his possession of the firearm, a central argument underlying his defense. (Doc. 40 at 4-5.)

---

[4] Valenciano also alleges that White was ineffective for failing to investigate. As Valenciano points out, the failure to investigate claim runs throughout the other five claims. (Doc. 40 at 16.) Accordingly, I will address the failure to investigate claim where it is raised in the other five claims and not as an independent claim.

The government offers two justifications for trial counsel's decision to call Valenciano to testify on his own behalf.[5] First, the government contends that trial counsel put Valenciano on the stand to obtain the jury's sympathy for Valenciano. (Doc. 43 at 15.) Second, the government contends that trial counsel sought to establish that because of his intoxication, Valenciano was unaware of his possession of the firearm. (Doc. 43 at 15.)

The government's effort to explain trial counsel's decision is unpersuasive. Trial counsel appears to have called Valenciano to testify on his own behalf in an effort to appeal to the jury's sympathy. (Doc. 43 at 15.) Valenciano's testimony, however, enabled the government to call Officer Garcia, a witness who testified to Valenciano's post-arrest confession. Assuming that trial counsel failed to advise Valenciano that his testimony would open the door for the government to call Officer Garcia as an impeachment witness, I conclude that trial counsel's decision to call Valenciano to testify on his own behalf fell below an objective standard of reasonableness. While calling a defendant to testify in order to appeal to a jury's emotions may be reasonable in some situations, even where the defendant's testimony establishes the elements of the crime, such a decision is not objectively reasonable when the defendant's testimony opens the door for the introduction of a confession used to impeach the defendant's testimony. *Cf. Capps v. Sullivan*, 921 F.2d 260, 262 (10th Cir. 1990) ("[W]hen a defendant takes the stand in his own behalf and admits all of the elements of the crime, exactly in accord with the court's instructions to the jury, it is surely inadequate legal representation

---

[5] The United States has filed an affidavit by Valenciano's counsel describing his representation of Valenciano. (Doc. 43 Ex. 2) I have not relied on the affidavit to decide any issue of fact or to deny Valenciano a hearing. *See Machibroda v. United States*, 368 U.S. 487, 491-95 (1962) (concluding that district court "did not proceed in conformity with the provisions of 28 U.S.C. § 2255 [] when it made findings on controverted issues of fact without notice to the petitioner and without a hearing"); *Sciberras v. United States*, 404 F.2d 247, 250 (10th Cir. 1968) (recognizing that an ex parte affidavit "may assist in formulating issues of fact, but may not alone be used to decide ex parte, disputed questions of material fact").

to hope that the jury will ignore the court's instructions and acquit from sympathy, rather than to raise an entrapment defense that has some support in the evidence."); *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) ("Hoping that the jury would ignore the law and be merciful in light of [defendant's] confession was not objectively reasonable."). Additionally, the government appears to contend that trial counsel's decision to call Valenciano as a witness was designed to show that Valenciano was unaware, due to his intoxication, that he had possession of the firearm. (Doc. 43 at 15.) Voluntary intoxication, however, is not a defense to possession of a firearm. *See United States v. Williams*, 403 F.3d 1188, 1194 (10th Cir. 2005) (recognizing that as a general intent crime, being a felon in possession of a firearm is not subject to the defense of voluntary intoxication). Not only did Valenciano's testimony establish that Valenciano was voluntarily intoxicated at the time of his possession of the firearm, it also led to the impeachment of Valenciano's testimony. A decision that leads to both self-incriminating testimony and opens the door for an impeachment witness merely to appeal to a jury's sympathy is not objectively reasonable. Accordingly, Valenciano's Motion establishes that his trial counsel's performance was deficient.

To establish a claim for ineffective assistance of counsel under *Strickland*, however, Valenciano must also show that he was prejudiced by trial counsel's deficient performance. *Strickland*, 466 U.S. at 694. To establish prejudice, the defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The jury convicted Valenciano of being a felon in possession of a firearm under 18 U.S.C. § 922(g). A conviction under § 922 requires that the government prove that the defendant had knowledge of his possession of the firearm. "[E]ven if a felon held a firearm for a mere second or two, unless that felon truly did not know that what he possessed was a firearm or

there was some recognized legal justification for his holding the firearm, § 922(g) will still impose criminal liability." *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999).

Although Valenciano's testimony enabled the government to call a witness to undermine Valenciano's lack of knowledge defense, the evidence the government presented in its case in chief was sufficient for a jury to conclude that Valenciano knowingly possessed the firearm. *See Williams*, 403 F.3d at 1194 (finding that although the defendant claimed he was unaware of his possession of the gun, there was sufficient evidence of knowledge where the defendant, although intoxicated, tried to push the gun back toward his companion). Resident monitors at Diersen observed Valenciano entering Diersen at 11:45 in the evening. Valenciano's late return from an unauthorized absence from Diersen, coupled with Gregory's conversation with Lara, prompted Judiscak to search Valenciano. After locating a firearm on Valenciano's person, Judiscak called the police. In a subsequent search of Valenciano, police officers located the firearm in Valenciano's front waist area and an ammunition magazine in his front pocket. The jury could reasonably have inferred from Valenciano's unauthorized absence from Diersen, along with the gun and ammunition magazine found in his pants and pocket, that he knowingly possessed the firearm. Lara's visit to Diersen and Valenciano's struggle in the back seat of the police car provided additional evidence from which the jury could reasonably have inferred that Valenciano knowingly possessed the firearm. In light of the evidence against Valenciano, the probability that the result would have been different had Valenciano not testified is far from reasonable. Accordingly, Valenciano fails to demonstrate that he was prejudiced by his trial counsel's deficient performance.

      2.    **Testimony of Jochmal Gregory**

In his second claim, Valenciano appears to argue that his counsel was ineffective for failing

to impeach the testimony of Jochmal Gregory, a resident monitor at Diersen. Valenciano points to two minor discrepancies in Gregory's pre-trial statements and argues that his counsel's failure to investigate these statements and impeach Gregory's testimony because of these statements constitutes ineffective assistance of counsel. First, Valenciano compares Gregory's statement of his encounter with Lara with the statements of Frank Reyna, Gregory's co-worker at Diersen. Of his encounter with Lara, Gregory told police investigators that Lara stated "No he's not, he was just home and he's got a gun." (Doc. 40 at 8.) This statement, according to Valenciano, contrasts sharply with Reyna's summary of Reyna's own encounter with Lara, in which Reyna reported that Lara told him "What the hell is going on Richard came home all drunk." (Doc. 40 at 8.)

Second, Valenciano contests Gregory's description of Judiscak's pat down search of Valenciano. In an interview with investigators, Gregory "stated that they had stopped when Valenciano started to wake up and reach for the firearm, which was in his pants . . . ." (Doc. 40 at 8.) Valenciano contends that this statement conflicts with Judiscak's and Reyna's statements regarding the same incident. Judiscak stated that "he conducted a pat down search of Valenciano and felt what appeared to be a weapon in his pants." (Doc. 40 at 8.) Similarly, Reyna stated "that Judiscak conducted a pat down search of Valenciano . . . locating what he believed to be a firearm in his pants." (Doc. 40 at 8.) Valenciano argues that neither Judiscak's nor Reyna's statements specify that Valenciano, after waking, reached for the firearm. According to Valenciano, the discrepancy between Gregory's version of the events and that of Judiscak and Reyna suggests that Gregory lied while under oath.

Valenciano argues that his trial counsel's failure to investigate the discrepancies in Gregory's statements and impeach Gregory's testimony constitutes ineffective assistance of counsel. Valenciano

9

correctly points out that trial counsel has a duty to investigate. This duty, however, is not limitless. Rather, trial counsel's duty to investigate must be examined within the context of the particular case. *See United States v. Snyder*, 787 F.2d 1429, 1433 (10th Cir. 1986) ("We view counsel's conduct against the backdrop of what was manifestly an uncomplicated case, and a short trial."). "'An attorney who makes a strategic choice to channel his investigation into fewer than all plausible lines of defense is effective so long as the assumptions upon which he bases his strategy are reasonable and his choices on the basis of those assumptions are reasonable.'" *Id.* (quoting *United States v. Glick*, 710 F.2d 639, 644 (10th Cir. 1983)).

Trial counsel's failure to investigate the minor discrepancies in Gregory's statements did not render his conduct unreasonable. Gregory's statements give one account of the events on the evening of February 2, 2002; they do not contradict the statements made by other individuals following Valenciano's arrest. As such, they would not have provided counsel an opportunity to impeach Gregory's testimony. Trial counsel's decision to avoid a fruitless investigation does not fall below an objective standard of reasonableness.

### 3.     **Basis of Judiscak's Search of Valenciano**

Valenciano's third claim for ineffective assistance of counsel alleges that trial counsel's failure to challenge the basis of Judiscak's search of Valenciano fell below an objective standard of reasonableness. According to Valenciano, Gregory's conversation with Lara precipitated Judiscak's search of Valenciano. In this conversation, Gregory recounted that Lara stated "No he's not, and he was just at home and he got a gun." (Doc. 40 at 11.) Reyna, in contrast, described Lara as saying "What the hell is going on Richard came home all drunk." (Doc. 40 at 11-12.) Valenciano appears to argue that his trial counsel should have investigated this discrepancy. In doing so, he suggests,

10

counsel would have determined that Gregory gave an inaccurate portrayal of Lara's statement. According to Valenciano, a thorough investigation of what Lara said would have revealed that the workers at Diersen lacked a valid basis on which to search Valenciano.

Trial counsel's decision not to contest the basis of Judiscak's search of Valenciano did not constitute ineffective assistance of counsel for two reasons. First, even if halfway house residents are entitled to Fourth Amendment protection,[6] it would not have been unreasonable for trial counsel to conclude that Valenciano's decision to leave Diersen without authorization deprived him of the Fourth Amendment protection afforded to other halfway house residents. *Cf. United States v. Randolph*, 210 F. Supp. 2d 586, 590 (E.D. Pa. 2002) (holding that an individual confined to a halfway house who leaves the house without authorization, thus becoming a fugitive, loses all Fourth Amendment protection). *But cf. United States v. Pyeatt*, No. 2:05-CR-890, 2006 U.S. Dist. LEXIS 40337, at *9 (D. Utah June 15, 2005) (unpublished) (observing in dicta that fugitives from a halfway house may have Fourth Amendment protection). Valenciano left Diersen without authorization and subsequently returned at 11:45 in the evening. Trial counsel would not be unreasonable to conclude that upon leaving Diersen without authorization, Valenciano lost whatever Fourth Amendment protection he previously enjoyed.

Second, even if reasonable suspicion was needed to support Judiscak's search of Valenciano upon his return to Diersen, trial counsel's decision not to challenge the search was reasonable. Reasonable suspicion supported Judiscak's initial search of Valenciano. Without authorization, Valenciano had left Diersen. He then returned at 11:45 in the evening. Moreover, fifteen minutes after

---

[6] In *Samson v. California*, 126 S.Ct. 2193, 2202 (2006), the Supreme Court recently held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee."

his return, Lara arrived at Diersen and spoke with Gregory. Regardless of the content of Lara's statements, her presence at Diersen at 11:45 on a Saturday evening, together with Valenciano's unauthorized absence and late return to Diersen, was sufficient to establish reasonable suspicion to justify a search of Valenciano. *Cf. United States v. Hopes*, 286 F.3d 788, 789 (5th Cir. 2002) (finding reasonable suspicion where a resident monitor directed police toward a resident who had possession of a firearm); *United States v. Knights*, 534 U.S. 112, 121 (2001) (holding that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable"). Accordingly, a challenge to Judiscak's search of Valenciano would have proved meritless. Trial counsel's decision to avoid a meritless investigation does not render counsel's performance deficient.

    4. **Jury Instructions**

In his fourth claim, Valenciano argues that trial counsel's failure to challenge the court's jury instructions on the definition of "knowingly" constituted ineffective assistance of counsel. Specifically, Valenciano argues that his trial counsel should have sought to clarify the term "knowingly" when the jury requested clarifying instructions. The court originally instructed the jury that "the word knowingly . . . means that the act was done voluntarily and intentionally, not because of mistake or accident." (Tr. at 88.) After deliberating for some time, the jury sent a note asking the court to clarify the word "knowingly." The note read: "Your Honor, we need some clarification on Instruction 7A. Does a black-out or loss of memory come under voluntary intoxication?" (Tr. at 104.) The trial judge responded with a note that read: "Members of the jury, in response to your inquiry, you must use common sense to decide that question." (Tr. at 104.) Valenciano suggests that his trial

12

counsel's failure to object when the court declined the jury's request to clarify the term "knowingly" enabled the government to convict him without actually proving that he "knowingly" possessed the firearm.

Counsel's performance in this situation did not fall below an objective standard of reasonableness. Valenciano fails to specify what advantage could have been obtained through counsel's objection to the court's decision not to issue clarifying instructions. "'The submission of supplemental jury instructions after the jury has retired is a matter committed to the trial court's discretion.'" *Williams*, 403 F.3d at 1197 (quoting *United States v. Arias-Santos*, 39 F.3d 1070, 1075 (10th Cir. 1994)). Counsel's decision not to ask the court to issue clarifying instructions could easily have been a tactical decision. Counsel, for example, may have anticipated that clarifying instructions would have been more harmful to his client than the original instructions on their own. *Cf. id.* at 1197 (conviction under § 922(g) after court issued supplemental instructions to clarify the word "knowingly"). Accordingly, trial counsel's decision not to object to the court's refusal to issue clarifying instructions did not fall below an objective standard of reasonableness.

### 5.   **Officer Gary Garcia's Testimony**

In his fifth claim, Valenciano alleges that his trial counsel failed to investigate Valenciano's familial relationship with Officer Garcia. A thorough investigation of this relationship, according to Valenciano, would have enabled trial counsel to impeach Garcia's testimony and "cut the bottom out of the government's case." (Doc. 40 at 15.) Even if Valenciano is able to establish that trial counsel's failure to investigate Garcia's relationship with Valenciano rendered counsel's performance constitutionally defective, Valenciano is unable to demonstrate that such defective performance was prejudicial. As I discussed previously, the government assembled sufficient evidence in its case in

13

chief from which a jury could have reasonably inferred that Valenciano knowingly possessed the firearm. Impeachment of Garcia's testimony would not have undermined the evidence, presented in the government's case in chief, from which a jury could have reasonably inferred that Valenciano knowingly possessed the firearm. Valenciano left Diersen without authorization and returned late in the evening. A short time later, Judiscak found a firearm in the front waist area of Valenciano's pants and an ammunition magazine in his front pocket. Trial counsel's failure to investigate Valenciano's alleged familial relationship with Garcia as a potential source for the impeachment of Garcia's testimony does not undermine confidence in the jury's verdict. Accordingly, Valenciano fails to establish the elements necessary to support a claim for ineffective assistance of counsel.

      B.      **Valenciano's Claim of a *Booker* Violation**

As the second ground for his Motion, Valenciano seeks reconsideration of his sentence in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). According to Valenciano, the district court erred in treating the Federal Sentencing Guidelines as mandatory. Valenciano argues that under *Booker*, the district court has the discretion to impose a sentence below the minimum sentence called for by the Sentencing Guidelines. Valenciano did not raise the *Booker* claim on direct review but rather raises the *Booker* claim for the first time in his 2255 Motion. Valenciano correctly points out that *Booker*, which the Court made retroactively applicable to all cases pending on direct appeal and not yet final, had the potential to apply to his sentencing. Valenciano's failure, however, to raise the *Booker* claim on direct review prevents him from raising the claim in his 2255 Motion.

Under section 2255, the sentencing court may "vacate, set aside or correct the sentence" if the court concludes that "the sentence was imposed in violation of the Constitution or laws of the

14

United States, or [] the court was without jurisdiction to impose such sentence, or [] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255. Section 2255 motions, however, are not available to test the legality of matters that should have been raised on direct appeal. *Warner*, 23 F.3d at 291. Failure to present an issue on direct appeal bars a petitioner from raising that issue in his § 2255 Motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *Id.*

Valenciano has not shown cause and prejudice for his failure to raise the *Booker* claim on direct appeal. Even under a liberal construction of Valenciano's pleadings, it is clear that Valenciano does not allege that his appellate counsel was ineffective for failing to raise the *Booker* claim on direct appeal. The Supreme Court decided *Booker* shortly before the Tenth Circuit decided Valenciano's appeal. Valenciano thus had three months to file a petition for a writ of certiorari to challenge his sentence under *Booker*. Valenciano had sufficient opportunity to raise the *Booker* claim on direct appeal. *See Thorpe v. United States*, No. 05-2260, 2006 U.S. Dist. LEXIS, at *9 (D.D.C. Aug. 21, 2006) (denying a § 2255 motion where, after the Supreme Court's decision in *Booker*, the petitioner failed to file a timely petition for a writ of certiorari). Moreover, Valenciano provides no explanation for his failure to file a petition for certiorari for review of his *Booker* claim. Accordingly, Valenciano's *Booker* claim is procedurally defaulted and cannot be raised in his 2255 Motion.

### RECOMMENDED DISPOSITION

I recommend that Valenciano's Motion to Vacate, Set Aside or Correct Sentence under 18 U.S.C. § 2255 be denied.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE